Law Offices of
DENA MARIE YOUNG (CSB #215344)
2751 4th Street, PMB #136
Santa Rosa, CA 95405
Telephone: (707) 528-9479
Facsimile: (707) 692-5314
Email: dmyounglaw@gmail.com

Attorney for Defendant
KATRINA MARAS

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

SAN FRANCISCO DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA,<br><br>    Plaintiff,<br><br>    v.<br><br>KATRINA MARAS,<br><br>    Defendant. | No. 3:21-cr-00054 VC<br><br>**REPLY TO UNITED STATES' OPPOSITION TO MOTION TO SUPPRESS STATEMENTS** |

**I.**

**THE GOVERNMENT HAS NOT SHOWN THAT MS. MARAS' ALLEGED WAIVER WAS KNOWING, INTELLIGENT AND VOLUNTARY**

The *Miranda* warnings were born out of the Supreme Court's recognition that custodial interrogation is inherently coercive. *Miranda v. Arizona,* 384 U.S. 436, 439 (1966); *United States v. Dickerson*, 530 U.S. 428, 435 (2000). For a defendant's inculpatory statements to be admitted into evidence, the defendant's "waiver of *Miranda* rights [during custodial interrogation] must be voluntary, knowing and intelligent." *United States v. Binder*, 769 F.2d 595, 599 (9th Cir. 1985) (citing *Miranda* 384 U.S. at 479), overruled on other grounds by *United States v. Morales*, 108 F.3d 1031 (9th Cir. 1997) (*en banc*); see also *United States v. Vallejo*, 237 F.3d 1008, 1014 (9th Cir. 2001); *Schneckloth v. Bustamonte*, 412 U.S. 218 (1973). The court must look to the circumstances surrounding the alleged waiver, including the background, age, experience, and conduct of the accused, when determining whether that waiver was

voluntary. See *Edwards v. Arizona,* 451 U.S. 477, 482 (1981). The length of the detention, the repeated and prolonged nature of the questioning, and the use of physical punishment (such as the deprivation of food or sleep), to determine if law enforcement officers elicited a voluntary confession. See *Bustamonte*, 412 U.S. at 226. In general, a statement is considered involuntary if it is "extracted by any sort of threats or violence, [or] obtained by any direct or implied promises, however slight, [or] by the exertion of any improper influence." *Hutto v. Ross*, 429 U.S. 28, 30 (1976) (*per curiam*) (quoting *Bram v. United States*, 168 U.S. 532, 542-43 (1897)); see also *United States v. Tingle*, 658 F.2d 1332, 1335 (9th Cir. 1981) (agent's express statement that defendant would not see her child "for a while" and warning that she had "a lot at stake," referring specifically to losing her child, were patently coercive and defendant's resultant confession held involuntary). It is the government's burden to demonstrate that Ms. Maras knowingly and intelligently waived her rights, otherwise, no evidence obtained as result of the interrogation can be used against her. See *Miranda*, 384 U.S. at 479.

Here, the government has not met that burden. The government's Opposition to Ms. Maras' Motion to Suppress Statements (Dkt. 29) entirely ignores everything which took place prior to the recorded interview which created the coercive environment in which Ms. Maras was interviewed. First, agents invaded Ms. Maras' home to serve a search warrant in 2017. Rather than address the impact on Ms. Maras, the government asserts that the search was focused on her partner. Yet, electronic items which were used by her were seized. Somehow, those same items (which were supposedly connected to her partner) were used in questioning Ms. Maras on the day of her arrest.

On the morning of her arrest, she was followed from her home by numerous agents. Her young son was in the back seat of her car. She was pregnant with her second child. She was pulled over by CHP almost 20 minutes away. Her phone was taken from her. She was separated from her child who was left in the back seat of the car and driven by one of the agents (a total stranger to the doubtless frightened child) to a nearby IHOP parking lot to be turned over to his father. Exhibits E through H are screen shots from video taken by the child's father. They show a number of heavily armed agents (including AR-style rifles and tactical gear), which represent only a portion of those involved in Ms. Maras' arrest. The government apparently places no significance on the use of an overwhelming armed force to arrest a young pregnant woman who was charged only with improper use of a credit card.

REPLY TO USA OPPOSITION TO MOTION TO SUPPRESS

Ms. Maras was driven by more agents to yet another location - the federal courthouse in Riverside. By the time they arrived, approximately two hours had elapsed since her arrest. At various times during the lengthy interviews, Ms. Maras expressed concerns about her employer. She expressed concerns about her son. She clearly wanted to get the interviews over and done with so that she could (hopefully) get back to her child.

The government asserts that the tone of the interviews was cordial. However, the surrounding circumstances suggest otherwise. The recordings of both interviews have been previously lodged with the court under seal (EXHIBITS C and D). From remarks made during the interviews, it appears that the environment was less than ideal. There were problems with lighting. At one point an alarmed door is opened, and the alarm sounds for several minutes. Ms. Maras is surrounded by agents and a prosecutor, with no one on her side. Throughout the interview, Ms. Maras seems nervous. She speaks very quickly. She expresses confusion about the questions and about whether she should talk to a lawyer. The government denies that there was any implication that she had to answer the questions to avoid custody, but that is belied by the overwhelming show of force in connection with her arrest. When all of the circumstances are considered, Ms. Maras' statements are not voluntary.

## II.
## CONCLUSION

For the foregoing reasons, Ms. Maras respectfully requests that this Court should grant suppression of her post arrest statements in this case.

Dated: June 8, 2021  Respectfully submitted,

 /s/
DENA MARIE YOUNG

Attorney for Defendant
KATRINA MARAS